WRIGHT, FINLAY & ZAK, LLP
Nichole Glowin, Esq., SBN 262932
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660
(949) 477-5050; Fax: (949) 477-9200
nglowin@wrightlegal.net

Attorneys' for Respondent, WELLS FARGO BANK, NATIONAL ASSOCIATION
SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, NATIONAL
ASSOCIATION, AS TRUSTEE FOR GSAMP TRUST 2003-HE2, MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 2003-HE2

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA- SAN DIEGO DIVISION

| | |
|---|---|
| In re:<br><br>SUSAN L. BOURGEOIS,<br><br>      Debtor. | ) Case No.: 12-16096-LA13<br>) Chapter: 13<br>)<br>) **LIMITED OPPOSITION TO DEBTOR'S**<br>) **OBJECTION TO CLAIM NO. 9**<br>)<br>) Date:     June 4, 2014<br>) Time:    10:00 a.m.<br>) Crtm:   Dept. 2, Room 118<br>) Location: 325 West F Street<br>)            San Diego, CA 92101-6998<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**TO THE HONORABLE LOUISE DECARL ADLER, UNITED STATES**

**BANKRUPTCY COURT JUDGE, THE DEBTOR, THE CHAPTER 13 TRUSTEE,**

**THEIR COUNSEL OF RECORD, IF ANY, AND ALL OTHER INTERESTED PARTIES:**

      Respondent, WELLS FARGO BANK, NATIONAL ASSOCIATION SUCCESSOR BY

MERGER TO WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, AS

TRUSTEE FOR GSAMP TRUST 2003-HE2, MORTGAGE PASS-THROUGH

1    CERTIFICATES, SERIES 2003-HE2 ("Respondent" or "Wells Fargo"), hereby submits the

2    following Limited Opposition ("Opposition") to Debtor, SUSAN L. BOURGEOIS's ("Debtor")

3    Objection to Claim No. 9 and Notice Thereof ("Objection").

4                    **MEMORANDUM OF POINTS AND AUTHORITIES**

5                          **I. INTRODUCTION**

6            Debtor seeks to disallow Respondent's Proof of Claim No. 9 ("Proof of Claim")

7    concerning the property located at 1280 Shari Way, El Cajon, CA 92019 ("Property") on the

8    grounds that 1) the Proof of Claim was untimely filed; 2) Respondent and its servicer, Ocwen

9    Loan Servicing ("Ocwen"), lack standing to file the Proof of Claim; 3) Respondent failed to

10   attach relevant documents to the Proof of Claim and 4) Respondent failed to include a complete

11   itemized accounting of arrears. While Respondent acknowledges that its Proof of Claim was

12   untimely filed, Respondent's limited Opposition seeks to address the balance of Debtor's defunct

13   arguments as they impact the treatment of Respondent's overall claim in this bankruptcy action.

14   As more fully set forth below, the remainder of Debtor's Objection arguments should be over-

15   ruled as they contain no legal or documentary support to overcome the prima facie validity of

16   Respondent's Proof of Claim. Furthermore, Debtor's arguments fail as a matter of fact and law

17   as Respondent attached a formal accounting and all relevant documents to its Proof of Claim to

18   establish the veracity of its arrears and standing.

19                          **II. STATEMENT OF FACTS**

20           On April 17, 2003, Debtor executed a Note ("Note") in favor of Accredited Home

21   Lenders, Inc. ("Lender") in the amount of $150,000.00 which was secured by a Deed of Trust

22   ("Deed of Trust") recorded against the property located at 1280 Shari Way, El Cajon, CA 92019

23   ("Property") in the San Diego County Recorder's Office ("SDCRO"), on April 30, 2003, as

24   Instrument No. 2003-0504618. True and correct copies of the Note and Deed of Trust are

25   attached hereto as Exhibits "1," and "2," respectively. Shortly thereafter, all right title and

26   interest in the Note and Deed of Trust was transferred and assigned by Lender to Respondent. To

27   complete the transfer Lender affixed an Allonge ("Allonge") to the Note containing an

28   endorsement in blank, executed an assignment ("Assignment") on October 4, 2011 evidencing

     the transfer from Lender to Respondent and recorded the Assignment in the SDCRO on October

17, 2011, as Instrument No. 2011-0544788. A true and correct copy of the Assignment is attached hereto as Exhibit "3," and a true and correct copy of the Allonge is included with the Note attached hereto as Exhibit "1."

In December of 2011 Debtor defaulted under the terms of the Note and Deed of Trust by failing to make the required mortgage payments. As a result of her continued default, on December 6, 2012, Debtor filed a petition under Chapter 13 of the United States Code in the United States Bankruptcy Court for the Southern District of California, San Diego Division, as Case No. 12-16096-LA13 ("Bankruptcy Action"). On February 26, 2014, Respondent filed its Proof of Claim in the Bankruptcy Action reflecting a total claim amount of $150,601.57, with $22,448.46 due in pre-petition arrears. A true and correct copy of Respondent's Proof of Claim is attached hereto as Exhibit "4."

## II. ARGUMENT

### A.    Respondent Had Standing to File the Proof of Claim

Debtor asserts that Respondent lacked standing to file its Proof of Claim because the Note was not endorsed to and/or made payable to Respondent.  This assertion is not only false but contradicts well settled law.

The relevant Note is a "negotiable instrument" by definition. California Commercial Code ("CCC") § 3104 states that:

> (a) … "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it is all of the following: (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder. (2) Is payable on demand or at a definite time. (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

The Commercial Code defines a "person entitled to enforce" an negotiable instrument as "(a) the holder of the instrument…" A "holder" is "the person in possession of a negotiable instrument that is payable either to bearer or, to an identified person that is the person in possession...." *Commercial Code* §1201(b)(21).  A holder attains such status by way of a

1  negotiation of the note, that is, the "transfer of possession, whether voluntary or involuntary, of

2  an instrument by a person other than the issuer...." *Commercial Code* §3201(a).  Where an

3  instrument is payable to bearer or endorsed in blank, it "may be negotiated by transfer of

4  possession alone." *Commercial Code* §§3201(b), 3205(b).  A "bearer" is "a person in possession

5  of a negotiable instrument ... that is payable to bearer or endorsed in blank." *Commercial Code*

6  §1201(b)(5).  In other words, "an instrument endorsed-in-blank becomes payable to bearer and

7  any person who possesses the instrument becomes its holder.  In re Zulueta, 2011 WL 4485621

8  at *4-5 (9th Cir. BAP 2011) (citing In re Aniel, 427 B.R. 811, 815-816 (Bkrtcy. N.D. Cal. 2010).

9      In this case, Respondent possesses the Note and its attachment of the endorsed

10  promissory note to its Proof of Claim evidences the same. (See Exhibit "4" attached hereto,

11  Proof of Claim). The last page of the Note, as attached to the Proof of Claim, contains a payee

12  endorsement in blank, without recourse, to the holder of the Note. Thus, by its possession of the

13  Note and its attachment of the Note to the Proof of Claim Respondent established that it is a

14  "holder" with standing and all legal entitlements to enforce the Note.

15  **B.    Ocwen Is The Servicer for Respondent and Has Standing to Act on**

16  **Respondent's Behalf**

17      CCC § 3301states that the "'Person entitled to enforce' an instrument means (a) the

18  holder of the instrument, [or] (b) a nonholder in possession of the instrument who has the rights

19  of a holder … A person may be a person entitled to enforce the instrument even though the

20  person is not the owner of the instrument or is in wrongful possession of the instrument." The

21  Court in In re Veal, 450 B.R. 897 (9th Cir. BAP 2011) confirmed this general proposition by

22  holding that a servicer has the ability to act on behalf of the holder of the Note and further stated

23  that "if a claim is challenged on the basis of standing, the party who filed the proof of claim

24  must show that it is either the creditor or the creditor's authorized agent in order to obtain the

25  benefits of Rule 3001(f)."  Id. at 922 (citing FRBP Rule 3001(b)).

26      Debtor attempts to assert that Respondent lacks further standing to pursue its Proof of

27  Claim because the party designated as Respondent's contact for notice and payments in the

28  Proof of Claim, Ocwen Loan Servicing, LLC ("Ocwen"), is not the actual servicer for

Respondent. Attached hereto as Exhibit "5," is a Limited Power of Attorney ("POA") executed

by Respondent. The POA at page 1 and page 3 specifically designates Ocwen as its servicer for Respondent's "GSAMP Trust 2003-HE2, Mortgage Pass-Through Certificates, Series 2003-HE2." Thus, Ocwen is the authorized servicer and agent for Respondent and is authorized to act on Respondent's behalf in any capacity involving the Note and Deed of Trust.

### C.      Respondent Attached All Necessary Documents to Establish the Perfection and Prima Facie Validity of Its Proof of Claim

Federal Rule of Bankruptcy Procedure ("FRBP") Rule 3001 (f) provides that a claim filed in according with the rules "shall constitute prima facie evidence of the validity of the amount of the claim." FRBP Rule 3001(c) states that "when a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim…" However, the failure to attach the requisite documents required by FRBP Rule 3001(c) is not sufficient grounds for a Court to disallow the proof of claim, but rather only strips the presumption of validity afforded to the proof of claim under FRBP Rule 3001(f). *See* In re Parrish, 326 B.R. 708 (Bankr. N.D. Ohio. E.Div., 2005); In re Isom, 321 B.R. 756 (Bankr. N.D. Ga., 2005); In re Shank, 315 B.R. 799 (Bankr. N.D. Ga., 2004). To establish the prima facie validity of a proof of claim concerning a mortgage or lien on a debtor's residence, the creditor must attach a copy of the Note and Deed of Trust associated with the mortgage to satisfy the requirements of FRBP Rule 3001(c). See  In re Parrish, 326 B.R. 708 (Bankr. N.D. Ohio. E.Div., 2005); In re Long, 353 B.R. 1 (Bankr. D. Mass., 2006); In re Cramer, 406 B.R. 267 (Bankr. M.D. Pa., 2009).

Debtor's Objection alleges that Respondent failed to attach a copy of a writing, security agreement or evidence of perfection to its Proof of Claim. This assertion is nonsensical. Respondent's Proof of Claim, a copy of which is attached hereto as Exhibit "4," was filed on the Official forms and contains a copy of the Note with endorsement in blank to Respondent, a copy of the recorded Deed of Trust, a copy of the recorded Assignment evidencing transfer of the Deed of Trust to Respondent and an escrow account statement. The attachment of these documents meets the "writing" requirement and establishes perfection. Moreover, the inclusion of these documents meets the conditions to deem Respondent's Proof of Claim "prima facie" valid under FRBP 3001(c)(1) and (c)(2).

1  **D.      Debtor Has Not Met His Burden to Challenge the Prima Facie Validity of**

2  **Respondent's Proof of Claim**

3       To rebut the prima facie validity of a claim, the objecting party must provide

4  "substantial evidence." *In re Hayes*, 393 B.R. 259, 269 (Bankr. D. Mass. 2008). The

5  "substantial evidence" provided must be equal in probative force to the prima facie validity of

6  the creditor's secured claim. *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991);

7  *United Student Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 210 (B.A.P. 9th Cir. 2006).

8  Merely raising questions about a proof of claim, and whether a proof of claim is valid or not, is

9  insufficient alone to justify disallowance. If the objecting party meets his burden by providing

10  substantial evidence, the burden then shifts back to claimant to establish the validity of its

11  claim. *Diamant v. Kasparian (In re Southern California Plastics, Inc.)*, 165 F.3d. 1243, 1247

12  (9th Cir. 1999); *In re Stewart*, No. 08-60012, 2010 WL 1258213(9th Cir. April 1, 2010).

13       As set forth above, Respondent's Proof of Claim is prima facie valid, and thus, the

14  burden is on Debtor to provide "substantial evidence" to overcome said validity. Debtor's

15  Objection contains no substantial legal support of evidence but rather only facially asserts that

16  Respondent failed to attach an itemized statement of account, that Respondent's arrears are

17  incorrect and that evidence attached in support of the arrears is not associated with Debtor's

18  loan account. These assertions fall far short meeting the "substantial evidence" requirement, and

19  further are completely erroneous.

20       As evidenced by the Proof of Claim attached hereto as Exhibit "4," Respondent filed the

21  required "Mortgage Proof of Claim Attachment" with its Proof of Claim which itemized the

22  arrears on the loan by date and amount. To further substantiate the arrears, Respondent attached

23  five invoices containing the file account number of "0797," which match the last four digits of

24  Respondent's loan account number listed on the face of the Proof of Claim, corroborating the

25  date and amount of arrears set forth in the Mortgage Proof of Claim Attachment.  Respondent

26  not only itemized its arrears but went above and beyond a general itemization by providing

27  specific invoices matching Debtor's loan account number to substantiate its arrears. Debtor's

28  claims therefore utterly fail as a matter of fact and further fail to pose a challenge to

Respondent's prima facie valid Proof of Claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III. CONCLUSION

Based on the foregoing, Respondent respectfully requests that this Court sustain Debtor's objection on timeliness grounds only.

Respectfully Submitted,

WRIGHT, FINLAY & ZAK, LLP

Dated: May 21, 2014                    By: ___/s/ Nichole Glowin_____
                                        Nichole Glowin, Esq.
                                        Attorneys' for Respondent, WELLS
                                        FARGO BANK, NATIONAL
                                        ASSOCIATION SUCCESSOR BY
                                        MERGER TO WELLS FARGO BANK
                                        MINNESOTA, NATIONAL
                                        ASSOCIATION, AS TRUSTEE FOR
                                        GSAMP TRUST 2003-HE2, MORTGAGE
                                        PASS-THROUGH CERTIFICATES,
                                        SERIES 2003-HE2

**LIMITED OPPOSITION TO DEBTOR'S OBJECTION TO CLAM NO. 9**

**PROOF OF SERVICE**

I am employed in the County of Orange, State of California.  I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660.

On May 21, 2014, I served the foregoing document described as **LIMITED OPPOSITION TO DEBTOR'S OBJECTION TO CLAIM NO. 9,** on the interested parties in this action as follows:

[X]     by placing [  ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

**SEE ATTACHED SERVICE LIST**

[X]     (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Newport Beach, California. I am readily familiar with the firm's business practice for collection and processing of correspondence for mailing with the U.S. Postal Service pursuant to which practice the correspondence is deposited with the U.S. Postal Service the same day in the ordinary course of business.

[X]     (BY ELCTRONIC SERVICE) Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF systems sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system.

[X]     (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under the penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on May 21, 2014, at Newport Beach, California.

   /s/ Brandon Quon
BRANDON QUON

---

**LIMITED OPPOSITION TO DEBTOR'S OBJECTION TO CLAM NO. 9**

1

2

3

## SERVICE LIST
BK Case No.:  12:16096-LA13
In re Susan Bourgeois

4   PARTIES SERVED BY ELECTRONIC NOTICE:

5

6   Shawn Huston, Counsel for Debtor: shawnh@hustonmccaffrey.com
Nichole Glowin, Counsel for Respondent: nglowin@wrightlegal.net
7   Jonathan Damen, Counsel for JP Morgan Chase, Junior Lienholder: bknotice@rcolegal.com
Rosemary Hong, Counsel for JP Morgan Chase, Junior Lienholder: bknotice@rcolegal.com
8   Kristin Webb, Counsel for JP Morgan Chase, Junior Lienholder: bknotice@rcolegal.com
United States Trustee: ustp.region15@usdoj.gov

9   PARTIES SERVED BY U.S. MAIL:

10

11   Susan L. Bourgeois
1280 Shari Way
12   El Cajon, CA 92019
***Debtor***

13

14   Shawn P.K. Huston
Huston McCaffrey, LLP
15   2171 Ulric Street, Ste #205
San Diego, CA 92111
16   ***Counsel for Debtor***

17

David L. Skelton
18   525 B St., Suite 1430
San Diego, CA 92101-4507
19   ***Chapter 13 Trustee***

20

United States Trustee
21   Office of the U.S. Trustee
402 West Broadway, Suite 600
22   San Diego, CA 92101-8511
23   ***U.S. Trustee***

24   Honorable Louise DeCarl Adler
325 West F Street
25   San Diego, CA 92101-6998
26   ***Court***

27

28

-9-

**LIMITED OPPOSITION TO DEBTOR'S OBJECTION TO CLAM NO. 9**

1

JP Morgan Chase

2

c/o Jonathan J. Damen, Rosemary Hong & Kristin Webb

Routh, Crabtree & Olsen P.S.

3

1241 E. Dyer Road, Suite 250

Santa Ana, CA 92705

4

*Junior Lienholder*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LIMITED OPPOSITION TO DEBTOR'S OBJECTION TO CLAM NO. 9**



# NOTE

April 17, 2003                          EL CAJON                          CA
**[Date]**                                **[City]**                              **[State]**

1280 SHARI WAY
EL CAJON, CA 92019
**[Property Address]**

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $150,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Accredited Home Lenders, Inc., A California Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.490 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on June 01, 2003. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 01 2033, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 502480 San Diego, CA 92150-2480 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments - Prepayment Charge Rider attached hereto

My monthly payment will be in the amount of U.S. $1,047.80 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N (0207).01                    Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3        Initials:

# EXHIBIT

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      6.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
SUSAN L. BOURGEOIS                -Borrower

_____ (Seal)
CLIFFORD J. BOURGEOIS             -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*

Loan No:

Mortgagee: SUSAN L. BOURGEOIS and CLIFFORD J. BOURGEOIS

Address:   1280 SHARI WAY
           EL CAJON, CA 92019

Loan Amount:$ 150,000.00

# ALLONGE TO NOTE

PAY TO THE ORDER OF:

_____

WITHOUT RECOURSE

_____
Melinda Enders
Assistant Secretary
Accredited Home Lenders, Inc., A California Corporation

## PREPAYMENT CHARGE RIDER TO NOTE

THIS PREPAYMENT CHARGE RIDER TO NOTE is made this 17th day of April, 2003, and is incorporated into and shall be deemed to amend and supplement the Note or Adjustable Rate Note, as applicable (the "Note"), of the same date given by the undersigned Borrower(s) to Accredited Home Lenders, Inc., A California Corporation.

### NOTICE TO THE BORROWER

**DO NOT SIGN THIS PREPAYMENT CHARGE RIDER TO NOTE BEFORE YOU READ IT.   THIS PREPAYMENT CHARGE RIDER TO NOTE PROVIDES FOR THE PAYMENT OF A PENALTY IF YOU WISH TO REPAY THE NOTE PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THE NOTE.**

**The provisions of this Prepayment Charge Rider to Note are authorized by applicable state law or the federal Alternative Mortgage Transaction Parity Act of 1982, 12 U.S.C. §§ 3801 et seq.**

### PREPAYMENT CHARGE

I/we may make a full prepayment or partial prepayments.  However, if the aggregate amount of the prepayment(s) made during any twelve (12) month period within Thirty-six(36) months of the date of the Note exceeds twenty percent (20%) of the original principal amount of the Note, then as consideration for the acceptance of such prepayment(s),  I/we agree to pay the holder of the Note a sum equal to six (6) months' interest on the amount by which such prepayment(s) exceed twenty percent (20%) of the original principal amount of the Note.  Any prepayments made after said initial Thirty-six (36) month period shall not be subject to any prepayment charge.

| | | |
|---|---|---|
| _Susan L. Bourgeois_    4-18-03 | | _Cliff J. Bg_    4-18-03 |
| Borrower **SUSAN L. BOURGEOIS**                    Date | | Borrower **CLIFFORD J. BOURGEOIS**                Date |
| | | |
| Borrower                                          Date | | Borrower                                          Date |
| | | |
| Borrower                                          Date | | Borrower                                          Date |
| | | |
| Borrower                                          Date | | Borrower                                          Date |

CA & HI - 5 yrs
Silent states w/ or w/o Parity.
ppr-std.uff

Recorded Request Of
FIDELITY NATIONAL TITLE

Recording Requested By:
**Accredited Home Lenders, Inc.**
**A California Corporation**
Return To:
**Accredited Home Lenders, Inc.,**
**A California Corporation**
**15030 Avenue of Science, Suite 100**
**San Diego, CA 92128**

Prepared By:
**Accredited Home Lenders, Inc.**
**A California Corporation**

DOC # 2003-0504618

APR 30, 2003 3:19 PM
**37111**
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:    66.00



2003-0504618

———————————[Space Above This Line For Recording Data]———————————

## DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated April 17, 2003 together with all Riders to this document.
**(B) "Borrower"** is CLIFFORD J. BOURGEOIS AND SUSAN L. BOURGEOIS, HUSBAND AND WIFE, AS JOINT TENANTS

Borrower's address is **1280 SHARI WAY**
**EL CAJON, CA 92019**                              . Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is Accredited Home Lenders, Inc.

Lender is a Corporation
organized and existing under the laws of State of: California

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005 1/01

-6A(CA) (0207)
Page 1 of 16          Initials:
VMP MORTGAGE FORMS - (800)521-7291

# EXHIBIT 2

## 37112

Lender's address is 15030 Avenue of Science  #100
                     San Diego, CA 92128
(D) "Trustee" is FIDELITY NATIONAL TITLE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated April 17, 2003
The Note states that Borrower owes Lender one hundred fifty thousand and 00/100
                                                                                 Dollars
(U.S. $150,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than May 1, 2033          .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Arbitration Rider |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

VMP®-6A(CA) (0207)                    Page 2 of 16              Initials: _____      Form 3005  1/01

## 37113

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

### TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
County                           of                  SAN DIEGO                           :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
See Legal Description Addendum Page Attached

Parcel ID Number: 489-191-08                              which currently has the address of
1280 SHARI WAY                                                                [Street]
EL CAJON                                               [City], California 92019
("Property Address"):                                                          [Zip Code]

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

-6A(CA) (0207)                        Page 3 of 15              Initials:              Form 3005  1/01

## 37114

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

-6A(CA) (0207)                    Page 4 of 15                    Initials: _____                    Form 3005    1/01

# 37115

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

## 37116

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

VMP®-6A(CA) (0207)      Page 6 of 15      Initials:      Form 3005   1/01

**37117**

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

## 37118

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(CA) (0207)                    Page 8 of 15          Initials: _____          Form 3005   1/01

## 37119

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

## 37120

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

37121

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6A(CA) (0207)                     Page 11 of 15                     Initials: [signature]                     Form 3005   1/01

## 37122

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

37123

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6A(CA) (0207)                         Page 13 of 16                    Initials                    Form 3005   1/01

37124

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                           SUSAN L. BOURGEOIS                -Borrower


_____          _____ (Seal)
                                           CLIFFORD J. BOURGEOIS             -Borrower


_____ (Seal)           _____ (Seal)
                -Borrower                                  -Borrower


_____ (Seal)           _____ (Seal)
                -Borrower                                  -Borrower


_____ (Seal)           _____ (Seal)
                -Borrower                                  -Borrower


-6A(CA) (0207)                    Page 14 of 15                    Form 3005  1/01

37125

State of California
County of *SAN DIEGO* } ss.
On *April 18, 2003* before me, *JANE FOURNIER* personally appeared
SUSAN L. BOURGEOIS and CLIFFORD J. BOURGEOIS

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

JANE FOURNIER
COMM. # 1254674
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Comm Exp Mar 24, 2004

_____ (Seal)

-6A(CA) (0207)          Page 16 of 16          Initials: _____          Form 3005   1/01

37126

## Legal Description Addendum

Borrowers:  SUSAN L. BOURGEOIS and CLIFFORD J. BOURGEOIS

Loan Number:

Property Address:   1280 SHARI WAY
                    EL CAJON, CA  92019

Legal Description
LOT 8 OF CAJON VILLAS UNIT NO. 3, IN THE CITY OF EL CAJON, COUNTY OF SAN
DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 4827, FILED IN THE
OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, AUGUST 11, 1961. EXCEPTING
THEREFROM ALL OILS, MINERALS, COALS, PETROLEUM, GAS AND KINDRED SUBSTANCES,
UNDER AND IN SAID LAND, BUT WITHOUT RIGHT OF ENTRY OF THE SURFACE THEREOF,
BUT WITH THE RIGHT HOWEVER, TO DRILL IN, THROUGH OR UNDER SAID LAND OR TO
EXPLORE, DEVELOP OR TAKE ALL MINERALS, COALS, OILS, PETROLEUM, GAS AND OTHER
KINDRED SUBSTANCES IN AND FROM SAID LAND ALL SUCH OPERATIONS TO BE CONDUCTED
ONLY BELOW A DEPTH OF 200 FEET BELOW THE SURFACE THEREOF.

37127

# ARBITRATION RIDER

This Arbitration Rider is signed as part of your Agreement with Lender or any assignee of Lender and is made a part of that Agreement. By signing this Arbitration Rider, you agree that either Lender or any assignee of Lender or you may request that any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of Lender, any assignee of Lender or you,  by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed.  The party initiating the arbitration proceeding shall have the right to select one of the following three arbitration administrators:  the National Arbitration Forum ("NAF"), the American Arbitration Association ("AAA") or JAMS ("JAMS").  The arbitrator shall be a lawyer with more than ten years experience or a retired or former judge. The arbitrator shall be independent of and unrelated to you or Lender or any assignee of Lender.  The rules and forms of the NAF, AAA and JAMS may be obtained by writing to or calling these organizations at the addresses and/or telephone numbers listed below.  Our address for service of process under this provision is the Lender's address as stated in page one of the Agreement or the address of any assignee of Lender.

Any participatory arbitration hearing that you attend will take place in the city nearest to your residence where a federal district court is located or at such other location as agreed by the parties.

If Lender or any assignee of Lender files a Claim, Lender or any assignee of Lender shall pay all filing costs.  If you file a Claim, filing costs and administrative fees, (other than hearing fees) shall be paid as follows: (a) you agree to pay for the initial cost of filing the Claim up to the maximum amount of $100.00; (b) at your request or if required by the arbitration administrator's rules, we will pay for filing costs over $100.00 and for any administrative fees charged by the arbitration administrator on any Claim submitted by you up to a maximum of the amount of the filing fees that would be charged by the arbitration administrator for a Claim equal to your loan amount; and (c) all filing costs and/or administrative fees in excess of the amount of the filing fees that would be charged by the arbitration administrator for a Claim equal to your loan amount shall be paid by you. The cost of up to one full day of arbitration hearings will be shared equally between the parties. Fees for hearings that exceed one day will be paid by the requesting party.  The parties shall each bear the expense of their respective attorney's fees, except as otherwise provided by law.  If a statute gives you the right to recover any of these fees, or the fees paid to the arbitration administrator, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary contained herein.  If the arbitrator issues an award in our favor you will not be required to reimburse us for any fees we have previously paid to the arbitration administrator or for which we are responsible.

This Arbitration Rider is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 - 16 (the "FAA").  The arbitrator shall apply applicable substantive law consistent with the FAA, including laws concerning reception, rejection and consideration of evidence, and shall, at the request of any party, provide written reasoned findings of fact and conclusions of law.  The arbitrators award shall not be subject to appeal except as permitted by the FAA.  The parties agree that the award shall be kept confidential.  Judgment upon the award may be entered in any court having jurisdiction.  All statutes of limitations that would otherwise be applicable shall apply to any arbitration proceeding.

The arbitrator shall be empowered to impose sanctions and to take such other actions as the arbitrator deems necessary to the same extent as could be imposed by a judge pursuant to the Federal Rules of Civil Procedure.

BOURGEOIS
Page 1 of 3

37128

This Arbitration Rider shall survive repayment of your loan and/or termination of the Agreement. If any portion of this Arbitration Rider is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this Arbitration Rider of the Agreement. In the event of a conflict or inconsistency between the rules and procedures of the arbitration administrator and this Arbitration Rider, this Arbitration Rider shall govern. No class actions or joinder or consolidation of any Claim with the claim of any other person are permitted in arbitration without the written consent of the parties.

No provision of, nor the exercise of any rights under this Arbitration Rider shall limit the right of any party during the pendency of any Claim, to seek and use ancillary or preliminary remedies, judicial or otherwise, for the purposes of realizing upon, preserving, protecting or foreclosing upon any property involved in any Claim or subject to the loan documents. The use of the courts shall not constitute a waiver of the right of any party, including the plaintiff, to submit any Claim to arbitration nor render inapplicable the compulsory arbitration provisions contained in this Arbitration Rider.

THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY. YOU ALSO ACKNOWLEDGE THAT YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE, CLAIMANT OR MEMBER OF ANY CLASS ACTION PERTAINING TO ANY CLAIM THAT IS SUBJECT TO ARBITRATION, EVEN IF SUCH CLASS ACTION IS PENDING ON THE DATE OF THIS ARBITRATION RIDER, EXCEPT THAT THIS ARBITRATION RIDER WILL NOT PRECLUDE YOUR PARTICIPATION IN A CLASS WHICH HAS ALREADY BEEN CERTIFIED BY A COURT OF COMPETENT JURISDICTION ON OR BEFORE THE DATE OF THIS ARBITRATION RIDER.

You may contact, obtain the arbitration rules of, or file a Claim with NAF, AAA, or JAMS as follows:

| | | |
|---|---|---|
| **National Arbitration Forum**<br>P.O. Box 50191<br>Minneapolis, MN 55405<br><br>www.arb-forum.org<br>Code of Procedure | **American Arbitration Association**<br>1150 Connecticut Ave, NW, 6th Floor<br>Washington, DC 20036-4140<br><br>www.adr.org<br>Arbitration Rules for Consumer Related Disputes (Claims under $10,000).<br>Arbitration Rules (all other claims). | **J.A.M.S./Endispute**<br>45 Broadway<br>New York, NY 10005<br><br>www.jamsadr.com<br>Financial Services Arbitration Rules and Commercial Procedures. |

BOURGEOIS
Page 2 of 3

37129

| | | |
|---|---|---|
| *Susan L. Bourgeois* | 4-18-03 | |
| Borrower | Date | |
| **SUSAN L. BOURGEOIS** | | |

| | | |
|---|---|---|
| *Clifford J. Bourgeois* | 4-18-03 | |
| Borrower | Date | |
| **CLIFFORD J. BOURGEOIS** | | |

_____   _____
Borrower                          Date

_____   _____
Borrower                          Date

_____   _____
Borrower                          Date

_____   _____
Borrower                          Date

_____   _____
Borrower                          Date

_____   _____
Borrower                          Date

**37130**

### EXHIBIT "ONE"

Lot 8 of Cajon Villas Unit No. 3, in the City of El Cajon, County of San Diego, State of California, according to Map thereof No. 4827, filed in the Office of the County Recorder of San Diego County, August 11, 1961.

Excepting therefrom all oils, minerals, coals, petroleum, gas and kindred substances, under and in said land, but without right of entry of the surface thereof, but with the right however, to drill in, through or under said land or to explore, develop or take all minerals, coals, oils, petroleum, gas and other kindred substances in and from said land all such operations to be conducted only below a depth of 200 feet below the surface thereof.

Assessor's Parcel No: 489-191-08



DOC # 2011-0544788

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING
[AND WHEN RECORDED MAIL TO]
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

OCT 17, 2011    4:22 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES:    18.00
DA:    1
PAGES:    1

## CORPORATE ASSIGNMENT OF DEED OF TRUST

--- Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust together with the certain note(s) described therein, without recourse, representation or warranty, together with all right, title and interest secured thereby, all liens, and any rights due or to become due thereon to WELLS FARGO BANK, NATIONAL ASSOCIATION SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, AS TRUSTEE FOR GSAMP TRUST 2003-HE2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-HE2, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by CLIFFORD J. BOURGEOIS AND SUSAN L. BOURGEOIS and recorded on 04/30/2003 as Instrument # 2003-0504618 in Book n/a, Page n/a in the office of the SAN DIEGO County Recorder, California.

Dated on 10 / 04 / 2011 (MM/DD/YYYY)
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., ITS SUCCESSORS AND ASSIGNS

By: _Tobias Bryant_    _Vice President_

STATE OF LOUISIANA    PARISH OF OUACHITA
The foregoing instrument was acknowledged before me on 10 / 04 / 2011 (MM/DD/YYYY) by Tobias Bryant as Vice President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., ITS SUCCESSORS AND ASSIGNS, who, being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me or produced identification. Type of identification _____

_Angela Ruth Payne_
Angela Ruth Payne #60422
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

ANGELA RUTH PAYNE
NOTARY
60422
PUBLIC
STATE OF LOUISIANA

Prepared By: E. Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

# EXHIBIT 3

| UNITED STATES BANKRUPTCY COURT       SOUTHERN     DISTRICT OF   CALIFORNIA | PROOF OF CLAIM |
|---|---|

Name of Debtor: Susan L. Bourgeois | Case Number: 12-16096

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Wells Fargo Bank, National Association, successor by merger to Wells Fargo Bank Minnesota, National Association, as Trustee for GSAMP Trust 2003-HE2 Mortgage Pass-Through Certificates, Series 2003-HE2

**COURT USE ONLY**

Name and address where notices should be sent:
Ocwen Loan Servicing, LLC
Attn:Bankruptcy Department
P.O. BOX 24605, West Palm Beach, FL 33416-4605
Telephone number: (855)-689-7367   email: BKTrusteeQueries@ocwen.com

☐ Check this box if this claim amends a previously filed claim.
Court Claim Number:
*(if known)*
Filed on: _____

Name and address where payment should be sent
(if different from above):
Ocwen Loan Servicing, LLC
Attn: Cashiering Department
1661 Worthington Rd,
Suite 100,
West Palm Beach, FL 33409
Telephone number: (855)-689-7367   email: BKTrusteeQueries@ocwen.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**     $ 150601.57

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** ___Money loaned___
(See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** 0797 | **3a. Debtor may have scheduled account as:** (See instruction #3a) | **3b. Uniform Claim Identifier (optional):** (See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**

Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☒Real Estate ☐Motor Vehicle ☐Other
Describe: 1280 Shari Way, El Cajon, CALIFORNIA 92019

Value of Property _____

Annual Interest Rate: 7.49000 %   ☒Fixed  or   ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$ 22448.46

Basis for perfection:  Mortgage/Deed of Trust

Amount of Secured Claim: $150601.57

Amount Unsecured: $0.00

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan- 11 U.S.C. §507 (a)(5).

Amount entitled to priority:
$ _____

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use- 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units- 11 U.S.C. §507 (a)(8).

☐ Other- Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.(See instruction #6)

# EXHIBIT 4



B10 (Official Form 10) (04/13)

2

**7. Documents:** Attached redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor    ☑ I am the creditor's authorized agent    ☐ I am the trustee, or the debtor, or their authorized agent (See Bankruptcy Rule 3004)    ☐ I am a guarantor, surety, indorser, or other codebtor (See Bankruptcy Rule 3005)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Vanessa Lewis
Title  Contract Manager
Company:  Ocwen Loan Servicing, LLC
Address and telephone number (if different from notice address above):
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

*(Signature)* Vanessa Lewis    02/26/14 *(Date)*

Telephone number:(561) 682-8000    email: affidavits@ocwen.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

_____ DEFINITIONS _____   _____ INFORMATION _____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system ( www.pacer.psc.uscourts.gov ) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

## Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| Name of debtor: | Susan L. Bourgeois | Case Number: | 12-16096 |
| Name of creditor: | Wells Fargo Bank, National Association, successor by merger to Wells Fargo Bank Minnesota, National Association, as Trustee for GSAMP Trust 2003-HE2 Mortgage Pass-Through Certificates, Series 2003-HE2 | Last four digits of any number you use to identify the debtor's account: | 0797 |

### Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date(included in the Amount of claim listed in Item 1 on your Proof of Claim form).

1. Principal Due                                                                                        (1) $ 131008.00

| 2. Interest Due | Interest Rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount | |
|---|---|---|---|---|---|
| | 7.49000 % | 11/01/2011 | 12/05/2012 | $ 10766.51 | |
| | | **Total Interest due as of the petition date** | | $ 10766.51 | Copy Total Here→ (2) +$ 10766.51 |

3. Total principal and Interest due                                                         (3) $ 141774.51

### Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | Amount |
|---|---|---|
| 1. Late charges | See Attached Exhibit-A | (1) $ 188.61 |
| 2. Non-sufficient funds (NSF) fees | _____ | (2) $ 0.00 |
| 3. Attorney's fees | 6/6/2013 | (3) $ 650.00 |
| 4. Filing fees and court costs | See Attached Exhibit-B | (4) $ 509.00 |
| 5. Advertisement costs | 6/6/2013, 6/6/2013 | (5) $ 2262.4 |
| 6. Sheriff/auctioneer fees | _____ | (6) $ 0.00 |
| 7. Title costs | 6/22/2012 | (7) $ 677.60 |
| 8. Recording fees | _____ | (8) $ 0.00 |
| 9. Appraisal/broker's price opinion fees | _____ | (9) $ 0.00 |
| 10. Property inspection fees | 09/06/2012,10/24/2012,11/24/2012 | (10) $ 31.50 |
| 11. Tax advances (non-escrow) | _____ | (11) $ 0.00 |
| 12. Insurance advances (non-escrow) | _____ | (12) $ 0.00 |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | _____ | (13) $ 5757.89 |
| 14. Property preservation expenses. Specify: | _____ | (14) $ 0.00 |
| 15. Other. Specify:_____ | _____ | (15) $ 0.00 |
| 16. Other. Specify:_____ | _____ | (16) $ 0.00 |
| 17. Other. Specify:_____ | _____ | (17) $ 0.00 |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (18) $ 10077.06 |

## Part 3: Statement of Amount Necessary to Cure Default as of the Petition Date

Does the installment payment amount include an escrow deposit?

☐ No

☒ Yes.   Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

**1. Installment payments due**    Date last payment received by creditor    ___N/A___
mm/dd/yyyy

Number of Installment payments due    (1)  13

**2. Amount of installment payments due**

13   installments@   $1047.80              $ 13621.40

Total installment payments due as of the petition date    $ 13621.40        Copy total here ->   (2)  $13621.40

**3. Calculation of cure amount**

Add total prepetition fees, expenses, and charges.                Copy total from Part 2 here ->   + $10077.06

Subtract total of unapplied funds (funds received but not credited to account)                        - $ 1250.00

Subtract amounts for which debtor is entitled to a refund                                              - $ 0.00

Total amount necessary to cure default as of the petition date                     (3)  $22448.46
Copy total onto Item 4 of Proof of
Claim form

Case number: 12-16096
Debtor: Susan L. Bourgeois

<u>Basis for asserting that "Wells Fargo Bank, National Association, successor by merger to Wells Fargo Bank Minnesota, National Association, as Trustee for GSAMP Trust 2003-HE2 Mortgage Pass-Through Certificates, Series 2003-HE2" has the right to foreclose</u>

Ocwen Loan Servicing, LLC services the underlying mortgage loan and note for the property referenced in this Proof of Claim for:

Wells Fargo Bank, National Association, successor by merger to Wells Fargo Bank Minnesota, National Association, as Trustee for GSAMP Trust 2003-HE2 Mortgage Pass-Through Certificates, Series 2003-HE2 (hereinafter, "noteholder") and is entitled to proceed accordingly. Should the Automatic Stay be lifted and/or set aside by Order of this Court or if this case is dismissed or if the Debtor obtains a discharge and a foreclosure action is commenced or recommenced, said foreclosure action will be conducted in the name of the noteholder. The noteholder has the right to foreclose because (check the applicable below):

____ Noteholder is the owner of the note.

_X_ Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent has possession of the promissory note and the promissory note is either made payable to Noteholder or has been duly endorsed.

____ Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent, has possession of the promissory note and will enforce the promissory note as transferee in possession.

____ Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder is unable to find the promissory note and will seek to prove the promissory note through the filing of a lost note affidavit.

<u>Post-Petition Payment</u>

*Your monthly payment amount may change due to an escrow requirement and/or interest rate adjustment.*

First post-petition payment due: 01/01/2013
First post-petition payment amount: $1221.17(P&I $1047.80+Escrow   $173.37)

      *** The shortage amount listed in the Analysis has been removed and will not be collected as part of the ongoing payment***

<u>Additional Amounts included in the "Amount of Claim as of Date Case Filed"</u>
<u>in Item 1 on Page 1 of the Claim:</u>

Escrow Advance: $5757.89
Deferred Principal Balance: None
Securitized Interest: None

Loan: *****0797
Date: 01/17/2013

Property Address:
1280 Shari Way
El Cajon, CA 92019

Susan L Bourgeois
Clifford J Bourgeois
1280 Shari Way
El Cajon, CA 92019

### ESCROW ACCOUNT DISCLOSURE STATEMENT - BANKRUPTCY
### PROJECTIONS FOR THE YEAR

This notice is being sent to you because OCWEN Loan Servicing, LLC has been notified that a proceeding under Chapter 13 of the Bankruptcy Code involving you was commenced on 12/06/12. This notice is concerned with post-petition escrow payments and disbursements only.

Please contact us at once if you are not the subject of a Chapter 13 proceeding or plan. If you have filed for any other bankruptcy protection or received any other discharge under the U.S. Bankruptcy Code that applies to this property, this notice is for informational purposes only and not intended as an attempt to collect a debt against you personally.

| | | |
|---|---|---|
| Escrow Balance as of the date of Bankruptcy filing 12/06/2012 | : | $-5757.89 |
| Escrow due for Disbursement in the month of Bankruptcy filing Dec 2012 | : | $0.00 |
| Amount to be part of the Proof Of Claim - Pre-Petition Escrow due | : | $5757.89 |
| Post petition Escrow balance as of the date of Bankruptcy Filing | : | $ |

| Description of<br>Next Disbursement | Estimated Amount(s) of<br>Next Disbursement |
|---|---|
| County Tax | $1,062.70 |
| County Tax | $1,017.71 |

| | |
|---|---|
| Total Annual Disbursements | $2,080.41 |
| Target Escrow Payment | $173.37 |
| Starting Escrow Balance Needed as of Mar 13 | $1,236.07 |

| Actual<br>Month | Actual Payments<br>To Escrow | Actual Payments<br>From Escrow | Description | Post Petition<br>Ending Balance |
|---|---|---|---|---|
| Mar-13 | $276.38 | $1,062.70 | County Tax<br>(POLICY # 4891910800) | $-786.32 |

| | | | | |
|---|---|---|---|---|
| Apr-13 | $276.38 | | | $-509.94 |
| May-13 | $276.38 | | | $-233.56 |
| Jun-13 | $276.38 | | | $42.82 |
| Jul-13 | $276.38 | | | $319.20 |
| Aug-13 | $276.38 | | | $595.58 |
| Sep-13 | $276.38 | | | $871.96 |
| Oct-13 | $276.38 | | | $1,148.34 |
| Nov-13 | $276.38 | $1,017.71 | County Tax (POLICY # 4891910800) | $407.01 |
| Dec-13 | $276.38 | | | $683.39 |
| Jan-14 | $276.38 | | | $959.77 |
| Feb-14 | $276.38 | | | $1,236.15 |
| TOTALS= | $3,316.56 | $2,080.41 | | |

In the event there is a tax and/or insurance increase over the coming escrow year, Federal law allows additional funds to be held to prevent the escrow account from being overdrawn. This additional amount, which is called a cushion, may be up to $1/6^{th}$ of the total payments to be made from the escrow account for the coming escrow year. Based on anticipated payments from your escrow account, which total $2,080.41 for the year, the required cushion amount is $346.74 (1/6th of $2,080.41). To avoid a shortage, your escrow balance should not fall below the cushion amount at any time during the coming escrow year.

As of the date of bankruptcy filing you had an pre-petition escrow balance in the amount of $-7,848.67 . Accordingly, the total amount treated as pre-petition escrow arrearages as of the date of bankruptcy filing 12/06/12 is $7,848.67. According to the projections for the coming year, the expected escrow balance is $1,236.07 This means you have a deficiency of $0.00 and a shortage of $1,236.07. Your total shortage for coming escrow period is anticipated to be $1,236.07. In an effort to assist you, the total shortage has been spread over 12 monthly payments. This equals $103.01 per month, which is the total anticipated shortage divided by 12. The shortage spread amount of $103.01 will be added to the target escrow payment of $173.37 calculated above, for total of $276.38 that will be the amount to be paid each month into your escrow account.

Therefore, your first monthly mortgage payment for the coming escrow year, beginning with your payment due on 03/01/2013, will be $1,324.18 (rounded) of which $1,047.80 will be for principal and interest and $276.38 will go into your escrow account. You may elect to send all or part of the above shortage to OCWEN at the address provided below. If you elect to pay the shortage your monthly payment will automatically be reduced.

NOTE: ANY TAX AND/OR INSURANCE FALLING DUE THROUGH THE MONTH IN WHICH BANKRUPTCY HAS BEEN FILED WOULD BE CONSIDERED AS PRE-PETITION ESCROW AND ADDED TOWARDS THE PRE-PETITION ESCROW ARREARAGES. THE PRE-PETITION ESCROW ARREARAGES WOULD BE REFLECTED IN THE PROOF OF CLAIM DOCUMENT IN A CHAPTER 13 BANKRUPTCY PROCEEDING.

****The Shortage determined on the above statement has been waived and credited to your escrow account. Your payment, beginning the effective date for the coming escrow year will include principal, interest and the "Target Escrow Amount (1/12th of the Annual Disbursements)"listed on the first page of the Analysis."

| Exhibit-A | | | | |
|---|---|---|---|---|
| LATE CHARGES BREAKDOWN | | | | |
| Date | Description | Amount | Payment | Total |
| 4/17/2012 | Late Charge Assessment | -$62.87 | | -$62.87 |
| 5/17/2012 | Late Charge Assessment | -$62.87 | | -$62.87 |
| 6/19/2012 | Late Charge Assessment | -$62.87 | | -$62.87 |
| 7/17/2012 | Late Charge Assessment | -$62.87 | | -$62.87 |
| 11/18/2012 | Late Charge Waived | $62.87 | | $62.87 |
| Total | | -$188.61 | | -$188.61 |

| Exhibit-B | | |
|---|---|---|
| Filing fees and court costs | | |
| Date | Description | Amount |
| 6/6/2013 | Notice of Default Recording | $25.00 |
| 6/6/2013 | Notice of Sale | $22.00 |
| 6/6/2013 | Appointment of Substitute Trustee | $22.00 |
| 6/6/2013 | Statutory Mailings | $440.00 |
| Total | | $509.00 |



## Invoice - 12-21891-FC-CA-1

### General Information

| Requestor Information | | Vendor Information | |
|---|---|---|---|
| ID | 3 | Vendor Id | 100053563 |
| Name | Ocwen Loan Servicing | Name | Western Progressive |
| Address Line 1 | 1661 Worthington Street | Email | Shibu.thomas@altisource.com |
| Address Line 2 | | Address Line 1 | 2002 Summit Blvd |
| City | West Palm Beach | Address Line 2 | Suite 600 |
| State | Florida | City | Atlanta |
| ZIP Code | 24737 | State | Georgia |
| Phone | 561-682-8004 | ZIP Code | 30319 |
| **Payment Details** | | Phone | (866) 960-8299 |
| Confirmation Number | 1616091 | | |
| Method | ACH | | |
| Amount | $3,413.46 | | |
| Date | 08/15/2013 | | |

### Invoice Header

| Invoice Information | | Purchase Order Information | |
|---|---|---|---|
| Invoice Number | 12-21891-FC-CA-1 | PO Number | 2759907 |
| Description | | Description | FORECLOSURE LETTER |
| Invoice Date | 06/06/2013 | Date | 06/90/2012 |
| Type | Interim | Order Type | FORECLOSURE LETTER |
| Status | Approved | Asset Number | 0797 |
| Comments | | File Number | 0797 |
| | | Service Transferred? | No Info |
| | | Property Close Date | |
| | | Original Principal Balance | |
| | | Loan Type | |
| | | Fee Cumulative at order level | |
| | | Lien Position | |

### Invoice Details

| Expense Code | Expense Name | Description | Service Date | Cost |
|---|---|---|---|---|
| 1641 | 1D4173 | Recording Assignment- (Not Recoverable from Borrower) | 06/06/2013 | $22.00 |

| FB41 | FB43004 | Statutory Mailings-(Recoverable from Borrower) | 06/06/2013 | $440.00 |
|------|---------|-----------------------------------------------|------------|---------|
| FB41 | FB41006 | Notice of Default Recording-(Recoverable from Borrower) | 06/06/2013 | $25.00 |
| FB41 | FB4135 | Appointment of Substitute Trustee-(Recoverable from Borrower) | 06/06/2013 | $25.00 |
| FB41 | FB4137 | Notice of Sale-(Recoverable from Borrower) | 06/06/2013 | $25.00 |
| FB40 | FB4006 | Trustee Fee-(Recoverable from Borrower) | 06/06/2013 | $650.00 |
| FB41 | FB4181 | Publication-(Recoverable from Borrower) | 06/06/2013 | $2,322.46 |
| FB41 | FB4182 | Posting-(Recoverable from Borrower) | 06/06/2013 | $140.00 |

**Notes:**
2011-21891
Additional FC costs were incurred during the good through
date. Hence please have the Invoice approved

| Summary | |
|---------|---|
| Subtotal | $3,363.46 |
| Total | $3,363.46 |
| Transaction Fee | $5.00 |
| Technology Fee | $25.00 |
| Net Total | $3,413.46 |



## Invoice - WI2536555

### General Information

| Requestor Information | Vendor Information | |
|---|---|---|
| | Name | ALTISOURCE |
| | Address Line 1 | NA |
| | Address Line 2 | |
| | City | NA |
| | State | Alabama |
| | ZIP Code | 7367 |
| | Phone | 45367 |

### Invoice Header

| Invoice Information | | Purchase Order Information | |
|---|---|---|---|
| Invoice Number | WI2536555 | Work Item Number | WI2536555 |
| Invoice Date | 11/24/2012 | Created Date | 11/24/2012 |
| Type | Preservation Normal Billing | Street # | 1290 |
| Status | Approved | Street Name | Shari Way |
| | | City | EL CAJON |
| | | State | California |
| | | ZIP | 92019 |
| | | Property Number | 8707 |
| | | Completed Date | 2012-11-23 |

### Invoice Details

| Category Code | Line Item Name | Unit | Quantity | Bill Client |
|---|---|---|---|---|
| 0815 - Inspection | 0815-020 - Pre-Foreclosure Property Inspection | Each | 1 | $16.50 |

| Summary | |
|---|---|
| Transaction Fee | $0.15 |
| Total Client Charge | $16.50 |
| Net Client Charge | $16.50 |



## Invoice - WI2153341

### General Information

**Requester Information**

**Vendor Information**

| | |
|---|---|
| Name | AUTIONWIDE |
| Address Line 1 | NA |
| Address Line 2 | |
| City | NA |
| State | Alabama |
| ZIP Code | 9387 |
| Phone | 49367 |

### Invoice Header

**Invoice Information**

| | |
|---|---|
| Invoice Number | WI2153341 |
| Invoice Date | 10/24/2012 |
| Type | Preservation Normal Silimg |
| Status | Approved |

**Purchase Order Information**

| | |
|---|---|
| Work Item Number | WI2153341 |
| Created Date | 10/03/2012 |
| Street # | 1360 |
| Street Name | Shari Way |
| City | EL CAJON |
| State | California |
| Zip | 92019 |
| Property Number | 6797 |
| Completed Date | 2012-10-12 |

### Invoice Details

| Category Code | Line Item Code | Unit | Quantity | Total Charge |
|---|---|---|---|---|
| 0015 - Inspection | 0015-020 - Pre-Foreclosure Property Inspection | Each | 1 | $10.50 |

### Summary

| | |
|---|---|
| Transaction Fee | $0.00 |
| Total Client Charge | $10.50 |
| Net Client Charge | $10.50 |



### Invoice - WI1589944

| General Information | | | |
| --- | --- | --- | --- |
| Requestor Information | | Vendor Information | |
| | | Name | ADIECHECK |
| | | Address Line 1 | NA |
| | | Address Line 2 | |
| | | City | NA |
| | | State | Alabama |
| | | ZIP Code | 9389 |
| | | Phone | 45367 |

| Invoice Header | | | |
| --- | --- | --- | --- |
| Invoice Information | | Purchase Order Information | |
| Invoice Number | WI1589944 | Work Item Number | WI15e3916 |
| Invoice Date | 07/06/2012 | Created Date | 07/12/2012 |
| Type | Preservation Normal Billing | Street # | 1280 |
| Status | Approved | Street Name | Shari Way |
| | | City | EL CAJON |
| | | State | California |
| | | Zip | 92019 |
| | | Property Number | 0797 |
| | | Completed Date | 2012-06-25 |

| Invoice Details | | | | |
| --- | --- | --- | --- | --- |
| Invoice Code | Line Item Code | | Quantity | Total Cost |
| 0015 - Inspection | 0015-020 - Pre-Foreclosure Property Inspection | Each | 1 | $10.50 |

| Summary | |
| --- | --- |
| Transaction Fee | $0.10 |
| Total Client Charge | $10.90 |
| Net Client Charge | $10.90 |



## Invoice - 201206220066

### General Information

| Requestor Information | | Vendor Information | |
|---|---|---|---|
| ID | 5 | Vendor Id | 100115785 |
| Name | Ocwen Loan Servicing | Name | Premium Title of California |
| Address Line 1 | 1661 Worthington Street | Email | Magesh.Venkataramani@altisource.com |
| Address Line 2 | | Address Line 1 | 2002 Summit Boulevard, Suite 605 |
| City | West Palm Beach | Address Line 2 | |
| State | Florida | City | Atlanta |
| ZIP Code | 24737 | State | Georgia |
| Phone | 561-682-8000 | ZIP Code | 30319 |
| **Payment Details** | | Phone | (770) 612-7007 |
| Confirmation Number | 1698642 | | |
| Method | CHECK | | |
| Amount | $653.86 | | |
| Date | 06/28/2012 | | |

### Invoice Header

| Invoice Information | | Purchase Order Information | |
|---|---|---|---|
| Invoice Number | 201206220066 | PO Number | 2755806 |
| Description | | Description | OTHER SERVICES PACKAGE |
| Invoice Date | 06/22/2012 | Date | 06/20/2012 |
| Type | Interim | Order Type | OTHER SERVICES PACKAGE |
| Status | Approved | Asset Number | 0797 |
| Comments | | File Number | 0797 |
| | | Service Transferred? | No Info |
| | | Property Close Date | |
| | | Original Principal Balance | |
| | | Loan Type | |
| | | Fee Cumulative at order level | |
| | | Lien Position | |

### Invoice Details

| Service Code | Category Code | Description | Service Date | Cost |
|---|---|---|---|---|
| F05W | F65801 | Title Search-(Recoverable from Borrower) | 06/22/2012 | $653.86 |

| Summary | |
|---|---|
| Subtotal | $477.60 |
| Total | $477.60 |
| Transaction Fee | $5.00 |
| Technology Fee | $5.00 |
| Net Total | $467.60 |

Case 12-16096-LA13    Claim 9-1    Filed 02/26/14    Desc Main Document    Pg. 18 of 45

| Ocwen Loan Servicing, LLC | Account Statement | |
| www.ocwen.com | | |

O C W E N

NMLS #: 1852
NC Permit No. 3946
☎ CUSTOMER CARE CENTER 1-800-746-2936
*Your call may be recorded for the coaching and development of our associates*

| | |
|---|---|
| Account Number: | |
| Account Statement Date: | 11/19/2012 |
| Property Address: | |
| 1280 Shari Way | |
| El Cajon CA 92019 | |
| DELQ | Page 1 |

**Special Notices**

SUSAN L BOURGEOIS
CLIFFORD J BOURGEOIS
1280 SHARI WAY
EL CAJON CA  92019-2237

### Account Information

| | |
|---|---|
| * Current Principal Balance: | 131,008.00 |
| Interest Rate: | 7.49000% |
| Next Payment Due Date: | 12/01/2011 |
| Escrow Advance Balance: | 4,740.18- |
| Current Suspense Balance: | 1,250.00 |
| Interest Paid Year-To-Date: | .00 |
| Taxes Paid Year-To-Date: | .00 |
| Beginning Principal Balance: | 131,008.00 |
| Escrow Deposits/Adjustments Year-to-Date: | 4,740.18- |
| Recently Assessed Amounts: | |
| 11/09/12 Property Inspection Fee: | 10.50 |

*This is the principal balance only, not the amount required to pay your account in full

### Details of Amount Due

| | |
|---|---|
| Current Amount Due: | |
| Principal: | 247.93 |
| Interest: | 799.87 |
| Escrow: | 410.40 |
| Less:Partial Payment Amount: | 1,250.00- |
| Current Amount Due by 12/01/12: | 208.20 |
| Past Due Amount: | |
| Principal: | 2,857.87 |
| Interest: | 9,715.73 |
| Escrow: | 5,815.53 |
| Past Due Amounts DUE IMMEDIATELY: | 18,389.13 |
| Assessed Fees/Expense Outstanding: | |
| Late Charges: | 461.43 |
| Curr-Property Inspection Fee: | 10.50 |
| Prev-Property Inspection Fee: | 52.50 |
| Prev-Property Valuation Expense: | 218.00 |
| Prev-Title Search: | 677.60 |
| Total Fees/Expense Outstanding: | 1,420.03 |
| Total Amount Due: | 20,017.36 |

### Recent Account Activity

| Date | Description | Principal | Interest | Escrow | Optional | Late Charges | Fees/Other | Suspense | Total |
|---|---|---|---|---|---|---|---|---|---|
| 11/18/12 | Late Charge Waived | | | | | | | | 52.87 |

### Important Messages

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. To obtain information about your rights under the Fair Credit Reporting Act go to www.ftc.gov/credit.

If you are currently in bankruptcy or if you have filed for bankruptcy since obtaining this loan, please read the bankruptcy information provided on the back of this statement.

Due to the status of your loan, fee(s) or charge(s) have recently been added.  Please review the enclosed fee description page for explanation of these and any other fee(s) or charge(s)

Our records indicate that your loan is in foreclosure  Accordingly, this statement may be for informational purposes only.
Payments received are to be applied in accordance with  your mortgage note. Payments will be first applied to  bring your loan contractually current. Any additional  funds received will be applied to outstanding fees and advances prior to being applied to principal.

Tax season is right around the corner  Please visit OCWEN's website at www.ocwen com to verify the social security number on file for your loan.

FOLD AND
DETACH HERE

PLEASE DETACH AND RETURN BOTTOM PORTION WITH PAYMENT IN THE ENCLOSED ENVELOPE WITH ADDRESS VISIBLE
PLEASE DO NOT SEND CORRESPONDENCE WITH YOUR PAYMENT - ALWAYS WRITE YOUR ACCOUNT NUMBER ON YOUR CHECK

FOLD AND
DETACH HERE

O C W E N

**Payment Coupon**
Account Number Susan L Bourgeois
             Clifford J Bourgeois

☐ Check for change of information
    and see reverse side of coupon

| | | |
|---|---|---|
| AMOUNT DUE | $ | 20,017.36 |
| If Received after 12/16/2012 add Late Charge of: | $ | 62.87 |
| Total Amount Due with Late Charge: | $ | 20,080.23 |
| Note: If your loan is current, any excess funds will first be applied to outstanding amounts due and then additional principal | Additional Principal: | $ |
| | Additional Escrow: | $ |
| | Late Charges: | $ |
| | Other: (Please Specify) | $ |
| | Total Enclosed: | $ |

OCWEN
PO BOX 6440
CAROL STREAM IL  60197-6440

## Visit our website 24 hours a day at www.ocwen.com

### IMPORTANT PHONE NUMBERS

Using a touch-tone phone, you have quick and easy access to your account information by dialing 1-800-746-2936.
Your call may be recorded for the training and development of our associates

| | | |
|---|---|---|
| Customer Care Center: | 1-800-746-2936 | Monday - Friday: 8:00 am to 9:00 pm, Saturday: 8:00 am to 5:00 pm and Sunday: 9:00 am to 9:00 pm ET |
| Tax Department: | 1-800-746-2936 | Monday - Friday: 8:00 am to 9:00 pm, Saturday: 8:00 am to 5:00 pm and Sunday: 9:00 am to 9:00 pm ET |
| Homeowners Insurance: | 1-866-825-9265 | Monday - Friday: 9:00 am to 8:30 pm ET |

### PAYMENT ADDRESS

Ocwen Loan Servicing, LLC
P.O. Box 6440
Carol Stream, IL 60197-6440

Make checks payable to Ocwen Loan Servicing, LLC.
Do not send correspondence with your payment,
and ensure that your Ocwen account number, name,
and property address are written on the front of your
check or money order.

### CORRESPONDENCE ADDRESSES

Please address all correspondence to Ocwen Loan Servicing, LLC to the attention
of the appropriate department. Be sure to include your Ocwen account number,
name and property address

Insurance Department (For Providing Hazard, Property & Flood Documentation):
P.O. Box 6723, Springfield, OH 45601-6723

Insurance Claim Department (For the Filing & Processing of Property Insurance
Claims): P.O. Box 6501, Springfield, OH 45501

Property Tax Department: P.O. Box 24665, West Palm Beach, FL 33416-4665

Research Department (For Qualified Written Requests):
P.O. Box 24736, West Palm Beach, FL 33416-4736

Customer Service Department (General Inquiries or Comments):
P.O. Box 24738, West Palm Beach, FL 33416-4738

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose.*

### OCWEN FEE STRUCTURE*

| Loan Documents: | | Payments (Western Union/Speedpay®): | |
|---|---|---|---|
| Collateral (Mortgage, Note and Riders) | $30.00 | Website (pay before or within 5 days of due date) | FREE |
| Individual documents | $15.00 | Website (pay 5 days or more after due date) | $10.00 |
| Payment History (free on www.ocwen.com) | $5.00 | Automated Phone System | $12.00 |
| Verification of Mortgage (free on www.ocwen.com) | $10.00 | Agent Assistance | $19.50 |
| Amortization Schedule (free on www.ocwen.com) | $15.00 | Returned Check Fee | $25.00 |

* These fees are subject to change and may not apply in all instances, depending upon applicable laws.

### IMPORTANT PAYMENT REMINDERS

- To expedite the posting of your payment, you may use our Automated Phone System to pay by phone ($12.00 fee) or Ocwen's website at www.ocwencustomers.com to make a payment online ($10.00 fee) See Payment Options section for additional details

- Avoid late charges by making payments for the exact coupon amount on or before the due date. Please allow 7 to 10 days for delivery. Postal delays will not prevent late charges for payments received after the grace period.

- To ensure prompt handling of your payment, please enclose your statement coupon with your check. The processing of your payment may be delayed if you send correspondence with your payment or if you send your payment to an address other than the address listed above

- Payments will be posted Monday through Friday only, excluding holidays

- If for any reason you are unable to make a payment when it is due, please contact the Customer Care Center at 1-800-746-2936 or visit our website at www.ocwencustomers.com and select the President's Foreclosure Prevention Plan link where you can download an application directly from the web if you meet the requirements.

- Ocwen Loan Servicing, LLC may report credit information to all major credit bureaus on a monthly basis. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. To view the details of how your account was reported to the credit bureaus, please visit Ocwen's website at www.ocwencustomers.com.

### PAYMENT OPTIONS

Pay by Phone – To use our convenient Western Union® Speedpay® option, call 1-800-746-2936 and simply follow the instructions within the "Automated Phone System" Please have your bank account number and routing information available. It's a quick and easy alternative to using regular mail. Agent assistance when making payments will be more costly and time consuming. See applicable fees above

Pay via the Ocwen Website – Make your payment online by simply logging into your account on www.ocwencustomers.com with your User ID and Password. If you have not yet created a User ID and Password, click on the New Customers link and you will be guided through the easy process. Once logged in to your account, select Make Payment Online which is located on the left side of the page. See applicable fees above.

ACH (Automated Payments) – Automatic monthly payment withdrawals can be easily setup and managed right from our website at www.ocwencustomers.com. Payments can be automatically drafted from your bank account on a monthly basis saving you time and money!

Pay via Western Union® Quick Collect® – To use this payment option you can find the location nearest to you by calling 1-800-238-5772 or visiting www.westernunion.com and clicking on "Find A Location" At the location, please pay to name "OCWEN" and provide the loan number

Pay via MoneyGram® ExpressPayments® – To find the location nearest you, call 1-800-Moneygram or visit www.moneygram.com and click on "Locate MoneyGram Receive Code 2955, the Company Name "OCWEN", the City Code "ORLANDO", and the State Code "FLORIDA" MoneyGram® and ExpressPayments® are registered marks of MoneyGram Payment Systems, Inc.

### IMPORTANT BANKRUPTCY INFORMATION

If you or your account are subject to pending bankruptcy or the obligation referenced in this statement has been discharged in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt. If you have any questions regarding this statement, or do not want Ocwen to send you monthly statements in the future, please contact us at 1-888-554-6599. Bankruptcy payments from the Trustee should be mailed to Ocwen Loan Servicing, LLC, P.O. Box 24781, West Palm Beach, FL 33416-4781.

Concerned about making your annual property tax or insurance payments on time?
Open an escrow account and let Ocwen handle these important payments for you. Find out how to open an escrow account
at www.ocwen.com or call the Customer Care Center at 1-800-746-2936!

OCW01P

---

**Change of Information:** Has any of your information changed? Have you added any new contact information?
If so, please complete this form and check the box on the front of your Payment Coupon or log into your account at
www.ocwen.com and update your contact information there.

Account Number: _____  Name: _____
                                          First           MI            Last

New Mailing Address: _____
                      Street Address          City          State      Zip Code

New Phone Numbers - Home: _____  Business: _____

Mobile/Pager: _____  E-mail Address: _____

When you provide a check as payment, you authorize us either to use information from your check to make a one time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution. Call the Customer Care Center number on this statement if you have questions about electronic check collection or do not want your payments collected electronically

Recorded Request Of
FIDELITY NATIONAL TITLE

Recording Requested By:
**Accredited Home Lenders, Inc.**
**A California Corporation**
Return To:
**Accredited Home Lenders, Inc.,**
**A California Corporation**
**15030 Avenue of Science, Suite 100**
**San Diego, CA 92128**

Prepared By:
**Accredited Home Lenders, Inc.**
**A California Corporation**

DOC # 2003-0504618

APR 30, 2003 3:19 PM

**37111**

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:    66.00

2003-0504618

————————————[Space Above This Line For Recording Data]————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated April 17, 2003
together with all Riders to this document.
**(B) "Borrower"** is CLIFFORD J. BOURGEOIS AND SUSAN L. BOURGEOIS, HUSBAND AND WIFE, AS JOINT TENANTS

Borrower's address is **1280 SHARI WAY**
**EL CAJON, CA  92019**                    . Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is Accredited Home Lenders, Inc.

Lender is a Corporation
organized and existing under the laws of State of: California

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005  1/01

-6A(CA) (0207)
Page 1 of 15                    Initials:

VMP MORTGAGE FORMS - (800)521-7291

37112

Lender's address is 15030 Avenue of Science  #100
San Diego, CA 92128
(D) "Trustee" is FIDELITY NATIONAL TITLE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated April 17, 2003
The Note states that Borrower owes Lender one hundred fifty thousand and 00/100
Dollars
(U.S. $150,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2033
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] Arbitration Rider |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

VMP®-6A(CA) (0207)                Page 2 of 16        Initials:            Form 3005  1/01

37113

**(Q)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
        County                    of                    SAN DIEGO                     ;
            [Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]
See Legal Description Addendum Page Attached

Parcel ID Number: 489-191-08                          which currently has the address of
1280 SHARI WAY                                                                      [Street]
EL CAJON                                              [City], California 92019       [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

VMP -6A(CA) (0207)                        Page 3 of 15            Initials: [signature]            Form 3005   1/01

## 37114

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

## 37115

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

## 37116

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

VMP®-6A(CA) (0207)                     Page 6 of 15                     Initials: ____

Form 3005  1/01

## 37117

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

VMP®-6A(CA) (0207)                        Page 7 of 15                Initials: [signature]                Form 3005  1/01

# 37118

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

## 37119

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

37120

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _____

-6A(CA) (0207)    Page 10 of 15    Form 3005  1/01

37121

**16.  Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18.  Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.  Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials:

37122

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

37123

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

6A(CA) (0207)      Page 13 of 15      Initials:      Form 3005   1/01

37124

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
SUSAN L. BOURGEOIS                -Borrower

_____ (Seal)
CLIFFORD J. BOURGEOIS             -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                -Borrower

VMP -6A(CA) (0207)              Page 14 of 15              Form 3005   1/01

37125

State of California
County of *SAN DIEGO*                                  } ss.
On *April 18, 2003* before me, *JANE FOURNIER*
                                                          personally appeared

SUSAN L. BOURGEOIS and CLIFFORD J. BOURGEOIS

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

JANE FOURNIER
COMM. # 1254674
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Comm Exp Mar 24, 2004

_____ (Seal)

-6A(CA) (0207)                  Page 16 of 16         Initials: [initials]        Form 3005   1/01

37126

## Legal Description Addendum

**Borrowers:  SUSAN L. BOURGEOIS and CLIFFORD J. BOURGEOIS**


**Loan Number:**

**Property Address:  1280 SHARI WAY**
                    **EL CAJON, CA  92019**


**Legal Description**
LOT 8 OF CAJON VILLAS UNIT NO. 3, IN THE CITY OF EL CAJON, COUNTY OF SAN
DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 4827, FILED IN THE
OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, AUGUST 11, 1961. EXCEPTING
THEREFROM ALL OILS, MINERALS, COALS, PETROLEUM, GAS AND KINDRED SUBSTANCES,
UNDER AND IN SAID LAND, BUT WITHOUT RIGHT OF ENTRY OF THE SURFACE THEREOF,
BUT WITH THE RIGHT HOWEVER, TO DRILL IN, THROUGH OR UNDER SAID LAND OR TO
EXPLORE, DEVELOP OR TAKE ALL MINERALS, COALS, OILS, PETROLEUM, GAS AND OTHER
KINDRED SUBSTANCES IN AND FROM SAID LAND ALL SUCH OPERATIONS TO BE CONDUCTED
ONLY BELOW A DEPTH OF 200 FEET BELOW THE SURFACE THEREOF.

37127

# ARBITRATION RIDER

This Arbitration Rider is signed as part of your Agreement with Lender or any assignee of Lender and is made a part of that Agreement.  By signing this Arbitration Rider, you agree that either Lender or any assignee of Lender or you may request that any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of Lender, any assignee of Lender or you,  by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed.  The party initiating the arbitration proceeding shall have the right to select one of the following three arbitration administrators:  the National Arbitration Forum ("NAF"), the American Arbitration Association ("AAA") or JAMS ("JAMS").  The arbitrator shall be a lawyer with more than ten years experience or a retired or former judge. The arbitrator shall be independent of and unrelated to you or Lender or any assignee of Lender.  The rules and forms of the NAF, AAA and JAMS may be obtained by writing to or calling these organizations at the addresses and/or telephone numbers listed below.  Our address for service of process under this provision is the Lender's address as stated in page one of the Agreement or the address of any assignee of Lender.

Any participatory arbitration hearing that you attend will take place in the city nearest to your residence where a federal district court is located or at such other location as agreed by the parties.

If Lender or any assignee of Lender files a Claim, Lender or any assignee of Lender shall pay all filing costs.  If you file a Claim, filing costs and administrative fees, (other than hearing fees) shall be paid as follows: (a) you agree to pay for the initial cost of filing the Claim up to the maximum amount of $100.00;  (b) at your request or if required by the arbitration administrator's rules, we will pay for filing costs over $100.00 and for any administrative fees charged by the arbitration administrator on any Claim submitted by you up to a maximum of the amount of the filing fees that would be charged by the arbitration administrator for a Claim equal to your loan amount; and (c) all filing costs and/or administrative fees in excess of the amount of the filing fees that would be charged by the arbitration administrator for a Claim equal to your loan amount shall be paid by you. The cost of up to one full day of arbitration hearings will be shared equally between the parties. Fees for hearings that exceed one day will be paid by the requesting party.  The parties shall each bear the expense of their respective attorney's fees, except as otherwise provided by law.  If a statute gives you the right to recover any of these fees, or the fees paid to the arbitration administrator, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary contained herein.  If the arbitrator issues an award in our favor you will not be required to reimburse us for any fees we have previously paid to the arbitration administrator or for which we are responsible.

This Arbitration Rider is made pursuant to a transaction involving interstate commerce; and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 - 16 (the "FAA").  The arbitrator shall apply applicable substantive law consistent with the FAA, including laws concerning reception, rejection and consideration of evidence, and shall, at the request of any party, provide written reasoned findings of fact and conclusions of law.  The arbitrators award shall not be subject to appeal except as permitted by the FAA.  The parties agree that the award shall be kept confidential.  Judgment upon the award may be entered in any court having jurisdiction.  All statutes of limitations that would otherwise be applicable shall apply to any arbitration proceeding.

The arbitrator shall be empowered to impose sanctions and to take such other actions as the arbitrator deems necessary to the same extent as could be imposed by a judge pursuant to the Federal Rules of Civil Procedure.

## 37128

This Arbitration Rider shall survive repayment of your loan and/or termination of the Agreement.  If any portion of this Arbitration Rider is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this Arbitration Rider of the Agreement.  In the event of a conflict or inconsistency between the rules and procedures of the arbitration administrator and this Arbitration Rider, this Arbitration Rider shall govern.  No class actions or joinder or consolidation of any Claim with the claim of any other person are permitted in arbitration without the written consent of the parties.

No provision of, nor the exercise of any rights under this Arbitration Rider shall limit the right of any party during the pendency of any Claim, to seek and use ancillary or preliminary remedies, judicial or otherwise, for the purposes of realizing upon, preserving, protecting or foreclosing upon any property involved in any Claim or subject to the loan documents. The use of the courts shall not constitute a waiver of the right of any party, including the plaintiff, to submit any Claim to arbitration nor render inapplicable the compulsory arbitration provisions contained in this Arbitration Rider.

THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION.  THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.  YOU ALSO ACKNOWLEDGE THAT YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE, CLAIMANT OR MEMBER OF ANY CLASS ACTION PERTAINING TO ANY CLAIM THAT IS SUBJECT TO ARBITRATION, EVEN IF SUCH CLASS ACTION IS PENDING ON THE DATE OF THIS ARBITRATION RIDER, EXCEPT THAT THIS ARBITRATION RIDER WILL NOT PRECLUDE YOUR PARTICIPATION IN A CLASS WHICH HAS ALREADY BEEN CERTIFIED BY A COURT OF COMPETENT JURISDICTION ON OR BEFORE THE DATE OF THIS ARBITRATION RIDER.

You may contact, obtain the arbitration rules of, or file a Claim with NAF, AAA, or JAMS as follows:

| | | |
|---|---|---|
| **National Arbitration Forum**<br>P.O. Box 50191<br>Minneapolis, MN 55405<br><br>www.arb-forum.org<br>Code of Procedure | **American Arbitration Association**<br>1150 Connecticut Ave, NW, 6th Floor<br>Washington, DC 20036-4140<br><br>www.adr.org<br>Arbitration Rules for Consumer Related Disputes (Claims under $10,000).<br>Arbitration Rules (all other claims). | **J.A.M.S./Endispute**<br>45 Broadway<br>New York, NY 10005<br><br>www.jamsadr.com<br>Financial Services Arbitration Rules and Commercial Procedures. |

37129

_Susan L. Bourgeois_    4-18-03
Borrower                 Date
**SUSAN L. BOURGEOIS**

_Clifford J. Bourgeois_    4-18-03
Borrower                 Date
**CLIFFORD J. BOURGEOIS**

_____
Borrower                 Date

_____
Borrower                 Date

_____
Borrower                 Date

_____
Borrower                 Date

_____
Borrower                 Date

_____
Borrower                 Date

37130

## EXHIBIT "ONE"

Lot 8 of Cajon Villas Unit No. 3, in the City of El Cajon, County of San Diego, State of California, according to Map thereof No. 4827, filed in the Office of the County Recorder of San Diego County, August 11, 1961.

Excepting therefrom all oils, minerals, coals, petroleum, gas and kindred substances, under and in said land, but without right of entry of the surface thereof, but with the right however, to drill in, through or under said land or to explore, develop or take all minerals, coals, oils, petroleum, gas and other kindred substances in and from said land all such operations to be conducted only below a depth of 200 feet below the surface thereof.

Assessor's Parcel No: 489-191-08



DOC # 2011-0544788

OCT 17, 2011      4:22 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES:         18.00
                              DA:        1

**PAGES:        1**

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING
[AND WHEN RECORDED MAIL TO]
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

## CORPORATE ASSIGNMENT OF DEED OF TRUST

--- Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust together with the certain note(s) described therein, without recourse, representation or warranty, together with all right, title and interest secured thereby, all liens, and any rights due or to become due thereon to WELLS FARGO BANK, NATIONAL ASSOCIATION SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, AS TRUSTEE FOR GSAMP TRUST 2003-HE2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-HE2, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by CLIFFORD J. BOURGEOIS AND SUSAN L. BOURGEOIS and recorded on 04/30/2003 as Instrument # 2003-0504618 in Book n/a, Page n/a in the office of the SAN DIEGO County Recorder, California.

Dated on 10 / 04 / 2011 (MM/DD/YYYY)
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., ITS SUCCESSORS AND ASSIGNS

By: _Tobias Bryant_       _Vice President_
     Tobias Bryant

STATE OF LOUISIANA    PARISH OF OUACHITA
The foregoing instrument was acknowledged before me on 10 / 04 / 2011 (MM/DD/YYYY) by Tobias Bryant as Vice President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., ITS SUCCESSORS AND ASSIGNS, who, being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me or produced identification. Type of identification _____

_Angela Ruth Payne_ #60422
Angela Ruth Payne #60422
Notary Public – State of LOUISIANA
Commission expires: Upon My Death

ANGELA RUTH PAYNE
NOTARY
60422
PUBLIC
STATE OF LOUISIANA

Prepared By: E. Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

# NOTE

April 17, 2003                    EL CAJON                    CA
    **[Date]**                    **[City]**                    **[State]**

1280 SHARI WAY
EL CAJON, CA  92019
**[Property Address]**

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $150,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Accredited Home Lenders, Inc., A California Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        7.490 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st        day of each month beginning on June 01, 2003        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 01 2033        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at        P.O. Box 502480 San Diego, CA  92150-2480
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments    - Prepayment Charge Rider attached hereto

My monthly payment will be in the amount of U.S. $ 1,047.80        .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N (0207).01                Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      6.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
SUSAN L. BOURGEOIS              -Borrower

_____ (Seal)
CLIFFORD J. BOURGEOIS          -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

*[Sign Original Only]*

BOURGEOIS

Loan No:

Mortgagee: SUSAN L. BOURGEOIS and CLIFFORD J. BOURGEOIS


Address:    1280 SHARI WAY
            EL CAJON, CA 92019

Loan Amount:$ 150,000.00

# ALLONGE TO NOTE


PAY TO THE ORDER OF:

_____

WITHOUT RECOURSE

_____
Melinda Enders
Assistant Secretary
Accredited Home Lenders, Inc., A California Corporation

BOURGEOIS

## PREPAYMENT CHARGE RIDER TO NOTE

THIS PREPAYMENT CHARGE RIDER TO NOTE is made this 17th day of April, 2003, and is incorporated into and shall be deemed to amend and supplement the Note or Adjustable Rate Note, as applicable (the "Note"), of the same date given by the undersigned Borrower(s) to Accredited Home Lenders, Inc., A California Corporation.

### NOTICE TO THE BORROWER

**DO NOT SIGN THIS PREPAYMENT CHARGE RIDER TO NOTE BEFORE YOU READ IT.   THIS PREPAYMENT CHARGE RIDER TO NOTE PROVIDES FOR THE PAYMENT OF A PENALTY IF YOU WISH TO REPAY THE NOTE PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THE NOTE.**

**The provisions of this Prepayment Charge Rider to Note are authorized by applicable state law or the federal Alternative Mortgage Transaction Parity Act of 1982, 12 U.S.C. §§ 3801 et seq.**

### PREPAYMENT CHARGE

I/we may make a full prepayment or partial prepayments.  However, if the aggregate amount of the prepayment(s) made during any twelve (12) month period within Thirty-six(36) months of the date of the Note exceeds twenty percent (20%) of the original principal amount of the Note, then as consideration for the acceptance of such prepayment(s),  I/we agree to pay the holder of the Note a sum equal to six (6) months' interest on the amount by which such prepayment(s) exceed twenty percent (20%) of the original principal amount of the Note.  Any prepayments made after said initial Thirty-six (36) month period shall not be subject to any prepayment charge.

| | | | |
|---|---|---|---|
| _Susan L. Bourgeois_   4-18-03 | | _Cliff J. B_   4-18-03 | |
| Borrower SUSAN L. BOURGEOIS    Date | | Borrower CLIFFORD J. BOURGEOIS    Date | |
| Borrower    Date | | Borrower    Date | |
| Borrower    Date | | Borrower    Date | |
| Borrower    Date | | Borrower    Date | |

CA & HI - 5 yrs.
Silent states w/ or w/o Parity.
ppr-std.uff

BOURGEOIS

When Recorded Return to:
Ocwen Loan Servicing, LLC
1661 Worthington Rd, Ste 100
West Palm Beach, FL 33409

2537

## LIMITED POWER OF ATTORNEY

1.   Wells Fargo Bank, National Association, successor by merger to Wells Fargo Bank Minnesota, National Association (formerly known as Norwest Bank Minnesota, National Association), not in its individual or banking capacity, but solely in its capacity as Trustee (the "Trustee") of those certain trusts set forth on the attached **Exhibit A** (each, a "Trust," and collectively, the "Trusts") under the respective Pooling and Servicing Agreements and/or Trust Agreements and any related governing transactional and servicing agreement(s) (collectively, the "Agreements") hereby constitutes and appoints:

### Ocwen Loan Servicing, LLC

solely in its capacity as the Servicer under the Agreements, and as successor by assignment to JPMorgan Chase Bank, National Association, successor by acquisition to Chase Home Finance, LLC, successor by acquisition to Chase Manhattan Mortgage Corporation, as applicable, as its true and lawful attorney-in-fact, acting by and through its authorized officers, with full authority and power to execute and deliver on behalf of the Trustee any and all of the following instruments to the extent consistent with the terms and conditions of the Agreements:

(i) all documents with respect to residential mortgage loans serviced for the Trust by the Servicer which are customarily and reasonably necessary and appropriate for the satisfaction, cancellation, or partial or full release of any mortgages, deeds of trust, or deeds to secure debt upon payment and discharge of all sums secured thereby;

(ii) all documents and instruments necessary to conduct any (a) foreclosure, or (b) the taking of any deed in lieu of foreclosure, or (c) any judicial or non-judicial foreclosure or termination, cancellation, or rescission of any such foreclosure, or (d) any similar procedure (collectively, as applicable, a "Foreclosure");

(iii) instruments appointing one or more substitute trustees or special purpose entities ("SPEs") to act in place of the corresponding entity named in any deed of trust;

(iv) affidavits of debt, notice of default, declaration of default, notices of foreclosure, and all such contracts, agreements, deeds, and instruments as are appropriate to (a) maintain any real property acquired through Foreclosure, or (b) effect any sale, transfer, or disposition of real property acquired through Foreclosure;

(v) all documents and instruments necessary to effect any assignment of mortgage or assignment of deed of trust; and

(iv) all other comparable instruments.

2.  This Limited Power of Attorney shall apply only to the foregoing enumerated transactions and shall be limited to the above-mentioned exercise of power. This instrument is to be construed and interpreted only as a limited power of attorney. The enumeration of specific items, rights, acts, or powers herein is not intended to, nor does it give rise to, and it should not be construed as, a general power of attorney.

3.  Third parties without actual notice may rely upon the power granted to said attorney-in-fact under this Limited Power of Attorney and may assume that, upon the exercise of such power, all conditions precedent to such exercise of power have been satisfied and this Limited Power of Attorney has not been revoked. This Limited Power of Attorney shall supersede and replace any other limited power of attorney executed by the Trustee in connection with the Agreements in favor of the Servicer and any such other limited power of attorney shall be deemed revoked by this writing.

# EXHIBIT 5

4. This Limited Power of Attorney is effective as of the date below and shall remain in full force and effect until (a) revoked in writing by the Trustee, or (b) as to any specific Trust, the termination, resignation or removal of the Trustee as trustee of such Trust, or (c) as to any specific Trust, the termination, resignation or removal of the Servicer as a servicer of such Trust, or (d) as to any specific Trust, the termination of the Agreement related to such Trust, whichever occurs earlier.

5. Nothing contained in this Limited Power of Attorney shall (i) limit in any manner any indemnification obligation provided by the Servicer to the Trustee or Trust under the Agreements or any document related thereto, or (ii) be construed to grant the Servicer the power to initiate or defend any suit, litigation, or proceeding in the name of the Trustee or Trust except as specifically provided for herein or under the Agreements.

Dated: April 17, 2012

Wells Fargo Bank, National Association, not in its individual or banking capacity, but solely as Trustee on behalf of the Trust(s)

Attest:

By: Cynthia C. Day
Its: Assistant Secretary

By: Barry Silvermetz
Its: Vice President

Unofficial Witnesses:

Matthew Shaw

Daniel Williamson

STATE OF MARYLAND
COUNTY OF HOWARD                    ss:

On the 17th day of April 2012 before me, Kathleen A. Dean, a Notary in and for said State, personally appeared Barry Silvermetz, known to me to be Vice President of Wells Fargo Bank, National Association, and also known to me to be the person who executed this Limited Power of Attorney on behalf of Wells Fargo Bank, N.A., as Trustee, and acknowledged to me that Wells Fargo Bank, N.A., as Trustee, executed this Limited Power of Attorney.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my office seal the day and year written above,

Notary Public: Kathleen A. Dean
My commission expires 2-6-2013

## EXHIBIT A

1.  Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2007-BC1

2.  BNC Mortgage Loan Trust 2007-4, Mortgage Pass-Through Certificates, Series 2007-4

3.  Park Place Securities, Inc. Asset-Backed Pass-Through Certificates, Series 2005-WCH1

4.  GSAMP Trust 2003-HE2 Mortgage Pass-Through Certificates, Series 2003-HE2

5.  Morgan Stanley ABS Capital 1 Inc. Trust 2006-HE1, Mortgage Pass-Through Certificates, Series 2006-HE1

6.  Morgan Stanley ABS Capital I Inc. Trust 2006-WMC1 Mortgage Pass-Through Certificates, Series 2006-WMC1